**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

MMP OF MERRILL, INC. d/b/a MITCHELL METAL PRODUCTS, *on behalf of itself and all others similarly situated,*

*Plaintiff,*

v.

ASPIRUS, INC., ASPIRUS NETWORK, INC., SURGICAL ASSOCIATES, SC; GASTROINTESTINAL ASSOCIATES, S.C.; BONE & JOINT, S.C.; ENT ALLERGY & ASSOCIATES, S.C.; AND STEVENS POINT ORTHOPEDICS,

*Defendants.*

Civil Action No.

[Removal from State of Wisconsin, Circuit Court, Portage County, Docket No. 2026CV000288]

Action Filed: September 23, 2026

Date Served: September 28, 2026 (initial Complaint)

**DEFENDANTS' NOTICE OF REMOVAL**

Defendants remove this class action to the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

In this class action, Plaintiff, MMP of Merrill, Inc. d/b/a Mitchell Metal Products, asserts an antitrust claim that is modeled in part on a case that was voluntarily dismissed with prejudice six months ago by a different set of plaintiffs in *Team Schierl Cos., et al. v. Aspirus, Inc., et al.*, No. 22-cv-580 (W.D. Wis.), after Chief Judge Peterson denied class certification and excluded the testimony of plaintiffs' expert. No. 22-cv-580, Dkt. 230. Now, Plaintiff—an absent class member in *Team Schierl*—has emerged with the same counsel to advance a "price fixing" legal theory that was part of the *Team Schierl* plaintiffs' failed bid for class certification. One of the key differences is that Plaintiff and its counsel here manipulated the complaint in an attempt to evade federal court jurisdiction. Plaintiff's creative pleading cannot avoid federal jurisdiction because this antitrust class action satisfies the requirements for removal under the Class Action Fairness Act ("CAFA").

In support of removal, Defendants state as follows:

**PARTIES**

1. Plaintiff is a Merrill, Wisconsin-based business that "produces metal products for use in a wide range of industries." Amended Class Action Complaint and Demand for Jury Trial ("Compl.") ¶ 6, No. 2026CV000288 (Portage Cnty. Cir. Ct., Wis.), Dkt. 49. Plaintiff allegedly operates a self-funded health plan for its employees. *Id*. Plaintiff has a principal place of business at 905 South State Street, Merrill, Wisconsin 54452.

2. Defendant Aspirus, Inc. is a nonprofit, community-directed health system based in Wausau, Wisconsin, serving parts of Minnesota, Wisconsin, and Michigan. Aspirus, Inc. is a Wisconsin corporation with a principal place of business at 2200 Westwood Drive, Wausau, Wisconsin 54401.

3. Defendant Aspirus Network, Inc. ("ANI") (and together with Aspirus, Inc., "Aspirus") is a physician-led organization that is engaged in the development, implementation, and operation of an active and ongoing clinical integration program by physicians and other providers, who agree to create a high degree of interdependence and cooperation among ANI physicians, ancillary providers, hospitals, and other healthcare entities to control costs, improve quality, and enhance patient satisfaction. ANI is a Wisconsin corporation with a principal place of business at 2000 Westwood Drive, Wausau, Wisconsin 54401.

4. Defendant Surgical Associates, SC ("Surgical Associates") is a Wausau-based surgical practice providing general, vascular, bariatric, and trauma surgery to patients in central and northern Wisconsin and Michigan's Upper Peninsula. Surgical Associates is a Wisconsin service corporation with a principal place of business at 2400 Pine Ridge Boulevard, Wausau, Wisconsin 54401.

5. Defendant Bone & Joint Clinic, S.C. (incorrectly named as "Bone & Joint, S.C.")

("Bone & Joint") is a Wisconsin orthopedic practice providing orthopedic surgery, sports medicine, pain management, podiatry, and physical and occupational therapy services. Bone & Joint is a Wisconsin service corporation with a principal place of business at 225000 Hummingbird Road, Wausau, Wisconsin 54401.

6. Defendant ENT & Allergy Associates, S.C. ("ENT & Allergy") provides ENT, allergy and asthma, audiology, and hearing services throughout locations in Wausau, Stevens Point, Rhinelander, Antigo, and Medford, Wisconsin. ENT & Allergy is a Wisconsin service corporation with a principal place of business at 512 S. 28th Avenue, Wausau, Wisconsin 54401.

7. Defendant Gastrointestinal Associates, S.C. ("GI Associates") is a gastroenterology practice founded in Wausau that provides digestive and gastrointestinal care at locations serving northern and central Wisconsin. GI Associates is a Wisconsin service corporation with a principal place of business at 411 Westwood Drive, Wausau, Wisconsin 54401.

8. Defendant Orthopaedic Centers of Wisconsin, S.C. (incorrectly named as "Stevens Point Orthopedics")[1] ("OCOW") is an orthopedic practice that provides orthopedic care, joint replacement, and physical therapy to patients in north-central Wisconsin. OCOW is a Wisconsin service corporation with a principal place of business at 3901 Stewart Avenue, Wausau, Wisconsin, 54401.

## TIMELINESS OF REMOVAL

9. On September 23, 2026, Plaintiff filed its Complaint in Portage County Circuit Court. Aspirus was served with the initial Summons and Complaint on September 28, 2026, and was later served with the Amended Summons and Complaint on October 15, 2026. On October 26, 2026, Defendants filed in state court a Stipulated Motion to Enlarge the Time to Answer or

[1] Stevens Point Orthopedics is a division of Orthopaedic Centers of Wisconsin.

Otherwise Respond to the Complaint, which was granted on October 27, 2026, setting a December 7, 2026 deadline for all Defendants to answer or otherwise respond to the Amended Complaint.

10. As required by 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants are being filed herewith. The initial and amended complaints, all affidavits of service, and all filings and orders related to the parties' stipulation to enlarge Defendants' responsive pleading deadline are filed as exhibits to this Notice of Removal. Non-substantive filings (e.g., notices of appearance and pro hac vice applications) are included in the contemporaneously filed Compendium of Circuit Court Filings.

11. This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed within 30 days after September 28, 2026, which is when Aspirus and other Defendants were first served with the initial Summons and Complaint.

12. Defendants deny any liability as to Plaintiff's claims and expressly reserve all rights in this regard.

**CAFA CONFERS ORIGINAL JURISDICTION**

13. Congress enacted CAFA to ensure that large, representative actions like this one—those seeking class-wide monetary recovery for "at least hundreds" of claimants, Compl. ¶ 86—are heard in federal court. *See* S. Rep. No. 109-14, at 4–5 (1st Sess. 2005), 2005 WL 627977. Congress was clear: "[CAFA] is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 681 (7th Cir. 2006) (quoting S. Rep. 14, 109th Cong. 1st Sess. 43 (2005)). Consistent with Congress's intent, the Supreme Court has held that there is "no antiremoval presumption attend[ing] cases invoking CAFA," as Congress "enacted [the statute] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating*

*Co. v. Owens*, 574 U.S. 81, 89 (2014) (citations omitted). This class action meets each of CAFA's requirements and thus fits squarely within the type of class action Congress intended to be tried in federal court.

14. As a threshold matter, this action qualifies as a "class action" under CAFA. CAFA's class action provisions extend federal jurisdiction to "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons." 28 U.S.C. § 1332(d)(1)(B). Here, Plaintiff plainly styled its Complaint as a class action and invokes Wisconsin's class action procedures (Wis. Stat. § 803.08). *E.g.*, Compl. ¶ 85.

15. To effectuate CAFA removal of this class action, this Notice must "contain[] a short and plain statement of the grounds for removal," which is subject to the "same liberal rules . . . that are applied to other matters of pleading." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578–79 (7th Cir. 2017); *see also Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018) ("Based on the plain language of § 1446(a), as well as *Dart Cherokee* and our precedent, the standard in assessing removal allegations under § 1442(a) starts with Rule 8(a)'s short and plain statement requirement."). This Notice easily satisfies that "liberal" standard.

16. For the reasons set forth below, this Court has original diversity jurisdiction over this class action pursuant to CAFA, 28 U.S.C. § 1332(d), because (1) the aggregate amount in controversy exceeds $5 million; (2) the number of putative class members exceeds 100; and (3) there are putative class members that are citizens of a state different from Defendants, creating "minimal diversity." *See Hart*, 457 F.3d at 679; *see also Roppo*, 869 F.3d at 578 (explaining that "CAFA expands jurisdiction for diversity class actions by creating federal subject matter jurisdiction if" these three requirements are satisfied).

## I. <u>The Amount in Controversy Exceeds $5 Million</u>.

17. CAFA aggregates the claims of all class members to determine whether the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Defendants' Notice "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89; *Betzner*, 910 F.3d at 1014.

18. Plaintiff challenges the way ANI contracts with Network Vendors on behalf of certain members of ANI's clinically integrated network. Compl. ¶ 38(a)–(b). According to the Complaint, "Network Vendors" are "entities that assemble provider networks for use by health plans." *Id.* ¶ 23. Plaintiff alleges that, "[t]o assemble [those provider] networks, Network Vendors enter into contracts with providers [such as ANI] that set the in-network rates (also known as 'allowed amounts' or 'reimbursement rates') that health plans using the network will pay the providers." *Id.* In effect, Network Vendors set the reimbursement rates that "the Payor sponsoring the health plan pays" for healthcare services. *Id.*; *see also id.* ¶ 80. Such "Payors" allegedly include "self-funded" health plans, i.e., "the many businesses, unions, insurers, and local governments that pay for their employees' or members' healthcare through health plans."[2] *Id.* ¶ 17.

19. Plaintiff also defines "Payors" to encompass "fully insured" plans, which include some of the nation's and Wisconsin's largest commercial insurers such as UnitedHealthcare, Anthem Blue Cross Blue Shield, and Security Health Plan. *Id.* ¶ 19.

20. In this action, Plaintiff seeks to void all of ANI's agreements with Network Vendors and requests reimbursement of "all payments" for outpatient healthcare services made under those

[2] Some Network Vendors (e.g., UnitedHealthcare, Anthem Blue Cross Blue Shield) are also "Commercial Insurance Payors," because, in addition to assembling networks of providers, they offer fully insured health plans and thus serve as the "primary Payor for healthcare services" under those plans. *Id.* ¶ 19.

agreements by self-funded Payors since September 23, 2020. *Id.* ¶¶ 17, 79–80, 104.

21. Additionally, Plaintiff seeks to "recover all payments" made by fully insured Payors directly to Defendants for outpatient healthcare services during the same period. *Id.* ¶ 81.

22. According to Plaintiff, these alleged payments were made to "hundreds of practitioners" over a six-year period. *Id.* ¶ 19. And, as discussed below, there are "at least hundreds of Class members" who allegedly made these payments. *Id.* ¶ 86. As such, it is plausible that Plaintiff has placed in controversy more than $5 million by seeking recovery based on alleged payments to "hundreds of practitioners" by "at least hundreds" of Payors for outpatient services over a six-year period.

23. Upon information and belief, payments made by payors to Defendants for outpatient services collectively exceeded $5 million over the six-year period.

24. Further, potential costs associated with Plaintiff's requested injunctive relief must be counted toward CAFA's amount-in-controversy requirement. *See Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 274 (7th Cir. 2011) ("The cost of prospective relief cannot be ignored in the calculation of the amount in controversy.").

25. As mentioned, Plaintiff seeks to invalidate ANI's agreements with Network Vendors and to enjoin ANI from continuing to negotiate with Network Vendors so that payors across the country can continue to access ANI and its network of clinically integrated providers. Compl. ¶¶ 5, 102; *see also* Demand for Judgment ¶¶ c.–e. Voiding these contracts would result in significant costs to Defendants and Network Vendors, i.e., absent class members.

26. The foregoing "plausibly explains how the stakes exceed $5 million," satisfying CAFA's amount-in-controversy requirement. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012).

**II. <u>The Putative Class Exceeds 100 Members</u>.**

27. CAFA jurisdiction is limited to cases where the proposed class has more than 100 members. 28 U.S.C. § 1332(d)(5)(B). CAFA defines such "class members" to include "persons (named or unnamed) who fall within the definition of the proposed or certified class." *Id.* § 1332(d)(1)(D).

28. Here, the Complaint alleges that "there are at least hundreds of Class members." Compl. ¶ 86. Thus, CAFA's "numerosity" requirement is satisfied.

**III. <u>Minimal Diversity Exists</u>.**

29. CAFA requires only that one class member be a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A). As stated, under CAFA, such class members include "persons (named ***or unnamed***) who fall within the definition of the proposed or certified class." *Id.* § 1332(d)(1)(D) (emphasis added).

30. Plaintiff purports to circumscribe the proposed class to "Payors who are citizens of Wisconsin" in a bid to avoid federal jurisdiction under CAFA. Compl. ¶ 85. Plaintiffs are in some circumstances permitted to define the putative class narrowly in such ways. *In re Sprint Nextel Corp.*, 593 F.3d 669, 676 (7th Cir. 2010).

31. Nonetheless, the Supreme Court has confirmed that, in drafting CAFA's class action provisions, Congress intentionally sought to encompass the rights of "unnamed parties in interest" in evaluating who is included in the class. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014). This is evident from Congress's decision to define "class members" to mean "'the persons (named or unnamed) who fall within the definition of the proposed or certified class.'" *Id.* (quoting 28 U.S.C. § 1332(d)(1)(D)). Although in the first instance CAFA looks to the definition of the proposed class, Plaintiff's characterization of that class must be considered alongside the substantive relief Plaintiff seeks. Here, the Complaint purports to limit the class to

Wisconsin citizens while at the same time requesting relief directed at contracts and payments involving entities outside Wisconsin. The resulting tension between the proposed class definition and the scope of the requested relief is central to the jurisdictional inquiry.

32. Plaintiff's requested relief would implicate the legal rights of "unnamed parties in interest" who are non-Wisconsin citizens. *See AU Optronics*, 571 U.S. at 169. Indeed, Plaintiff seeks relief that is not limited on its face to contracts involving Wisconsin citizens, payments made by Wisconsin citizens, or transactions in which Wisconsin citizens possess the relevant contractual rights. In these circumstances, the Court should examine whether the persons whose claims Plaintiff seeks to adjudicate through its requested classwide relief include non-Wisconsin citizens, notwithstanding the Complaint's nominal limitation of the class. *See id.*; *see also* 28 U.S.C. § 1332(d)(1)(D).

33. As discussed, the Complaint alleges that ANI contracts with Network Vendors and those contracts establish the reimbursement rates payable to ANI providers. Self-funded payors then enter separate agreements with Network Vendors to obtain access to those provider networks and become "obligated to pay the prices that have been set in the contracts between the Network Vendors and the providers." Compl. ¶ 29. Plaintiff specifically alleges that its own Network Vendor agreement obligates it to pay the rates established by the ANI-Network Vendor contract. *Id.* ¶ 80.

34. Plaintiff seeks to void "[t]he contracts between ANI and Network Vendors," regardless of the citizenship of the Network Vendor or the self-funded plans that accessed ANI providers through those Network Vendor agreements. Compl. ¶ 104. Plaintiff likewise seeks to "recover all amounts paid" under those Network Vendor contracts, again regardless of the citizenship of those Network Vendors or the self-funded plans that paid the amounts Plaintiff seeks

to recover. *Id.* ¶ 105. Plaintiff's putative class action thus necessarily implicates and alters the rights and interests of non-Wisconsin (1) Network Vendors, and (2) self-funded plans. Critically for present purposes, the requested relief is not expressly confined to the amounts paid by Wisconsin citizens or to contracts under which Wisconsin citizens alone possess enforceable rights. Thus, although Plaintiff purports to define a Wisconsin-only class, its prayer for relief reaches transactions involving entities that fall outside that definition. *E.g.*, *id.* ¶¶ 104–05.

35. As for self-funded payors, consider an Illinois corporation with a self-funded employee health plan. The corporation is headquartered and incorporated outside Wisconsin, so it is not a Wisconsin citizen. But it might employ people who live or work in north-central Wisconsin and want to provide access to healthcare services there under its health plan. According to the Complaint, the Illinois employer would "typically" contract with a Network Vendor, for example, HealthPartners (a non-Wisconsin citizen), to obtain access to the Network Vendor's existing provider network in north-central Wisconsin. *Id.* ¶ 29. The Illinois business would then become "obligated to pay the prices that have been set in the contracts between the [non-Wisconsin] Network Vendor[] and the [Wisconsin] providers." *Id.* ¶ 29.

36. Plaintiff's requested relief would implicate that Illinois corporation's rights and interests in multiple ways. First, Plaintiff's requested relief would entitle the Illinois corporation to recover all payments made under its Network Vendor-provider agreement for outpatient services rendered in north-central Wisconsin. Second, the requested relief would void the agreement that provides the Illinois corporation's employees access to in-network healthcare services in Wisconsin.

37. Plaintiff's requested relief would also implicate the rights of non-citizen Network Vendors. Network Vendors are alleged to be counterparties to the very contracts Plaintiff wants

declared void. Compl. ¶¶ 104–105. Non-citizen Network Vendors' contractual rights and obligations therefore would be the object of the requested judgment, even though they supposedly are not parties to this action.

38. Plaintiff's requested relief would also upend healthcare programs funded by the federal government. Network Vendor contracts often include terms applicable to both commercial plans, like those used by self-funded plans, and federally funded programs, like Medicare Advantage or Medicaid. By seeking to wholesale invalidate ANI's contracts with Network Vendors, the requested relief extends to, and dramatically alters, healthcare benefits for multiple federally funded programs that are administered by Network Vendors.

39. Plaintiff cannot reconcile its effort to restrict the proposed class to Wisconsin citizens with the sweeping relief it actually seeks. Plaintiff does not merely seek damages for payments made by Wisconsin citizens. It asks the Court to invalidate contracts between ANI and Network Vendors and to recover payments made under those contracts, without limiting that relief to transactions involving Wisconsin citizens. Compl. ¶¶ 104–05. Those contracts govern rights and obligations involving Network Vendors and self-funded payors outside Wisconsin. Thus, notwithstanding Plaintiff's citizenship-restricted class definition, the requested relief reaches contractual and payment rights extending well beyond Wisconsin.

40. Courts evaluating CAFA jurisdiction have looked beyond nominal class limitations where the relief sought would adjudicate substantive rights belonging to out-of-state real parties in interest. *See Schwartz v. SCI Funeral Servs. of Florida, Inc.*, 931 F. Supp. 2d 1191, 1196–98 (S.D. Fla. 2013), *aff'd*, 554 F. App'x 823 (11th Cir. 2014). Defendants recognize that CAFA defines class members by reference to the proposed class definition, 28 U.S.C. § 1332(d)(1)(D), and that plaintiffs ordinarily may restrict a class by citizenship. *See In re Sprint Nextel Corp.*, 593

F.3d at 676. But that principle does not resolve the distinct question presented here: whether Plaintiff may invoke a citizenship limitation in a thinly veiled attempt to defeat federal jurisdiction while simultaneously seeking representative relief that would adjudicate contractual and payment rights extending beyond the purportedly restricted class. The Court should assess the substance of the claims and relief actually pleaded, rather than accept Plaintiff's jurisdictional characterization in isolation. *See AU Optronics*, 571 U.S. at 169; *Schwartz*, 931 F. Supp. 2d at 1196–97.

41. Upon information and belief, during the alleged class period, hundreds of non-Wisconsin self-funded payors accessed Defendants for outpatient services and paid rates negotiated in Network Vendor agreements. Accordingly, the transactions and contractual relationships implicated by Plaintiff's requested relief extend beyond Wisconsin citizens. For this reason, to the extent Plaintiff seeks to adjudicate claims belonging to those non-Wisconsin entities through this class action, the Court should consider their citizenship in determining whether minimal diversity exists under CAFA. *See AU Optronics*, 571 U.S. at 169; *Schwartz*, 931 F. Supp. 2d at 1196–97; *see also Betzner*, 910 F.3d at 1014.

* * *

42. In sum, this action is eligible for removal under CAFA because (1) the amount in controversy exceeds $5 million; (2) the alleged class could consist of at least 100 or more members; and (3) the parties are minimally diverse.

**ALL REMOVAL REQUIREMENTS ARE MET**

43. Based on the foregoing, this Court has original jurisdiction over this action under 28 U.S.C. § 1332(d). Accordingly, removal is proper under 28 U.S.C. § 1441.

44. Pursuant to 28 U.S.C. § 1441(a), the United States District Court for the Western District of Wisconsin is the proper place to file this Notice of Removal because it is the district court for the federal district embracing the place where the removed action was filed and is

pending.

45. In accordance with 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal in this Court, Defendants will (1) give written notice thereof to Plaintiff; and (2) file a copy of this Notice of Removal with the Clerk of the Portage County Circuit Court, effectuating the removal. Defendants will promptly file proof of the foregoing with this Court.

46. By filing this Notice of Removal, Defendants do not waive any claim, argument, or defense that may be available to them, including objections related to jurisdiction, venue, or the sufficiency of Plaintiff's claims.

47. Although unanimous consent among Defendants is expressly not required for CAFA removal, all Defendants have provided contemporaneous consent to the filing of, and join in, this Notice of Removal. *See* 28 U.S.C. § 1453(b).

48. Defendants reserve the right to supplement or amend this Notice of Removal.

## CONCLUSION

49. Defendants respectfully remove this action from Portage County Circuit Court to this Court.

Dated: October 28, 2026

Respectfully submitted,

*/s/ Joseph M. Peltz*
Joseph M. Peltz
BECK, CHAET, BAMBERGER & POLSKY, S.C.
330 East Kilbourn Avenue, Suite 1085
Milwaukee, Wisconsin 53202
(414) 390-5936
jpeltz@bcblaw.net

*Attorneys for Defendant, Surgical Associates, SC*

*/s/ Matthew Splitek*
Matthew Splitek
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, Wisconsin 53703
(608) 251-5000
matthew.splitek@quarles.com

Steven A. Reed (*pro hac vice forthcoming*)
R. Brendan Fee (*pro hac vice forthcoming*)
Zachary M. Johns (*pro hac vice forthcoming*)
Vincent C. Papa (*pro hac vice forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street

*/s/ Jessica Biggott*
FREDRIKSON & BYRON P.A.
Jessica M. Biggott
Olivia "Liv" Montgomery (*admission pending*)
44 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
(608) 453-4260
jbiggott@fredlaw.com
omontgomery@fredlaw.com

Nicole M. Moen (*admission pending*)
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000
nmoen@fredlaw.com

*Attorneys for Defendant, Orthopaedic Centers of Wisconsin (which was incorrectly referenced in the caption as Stevens Point Orthopedics*)

*/s/ Thomas P. Heneghan*
Thomas P. Heneghan
HUSCH BLACKWELL LLP
33 East Main Street, Suite 300
Madison, Wisconsin 53703
(608) 255-4440
tom.heneghan@huschblackwell.com

*Attorneys for Defendant, Bone & Joint Clinic, S.C. (incorrectly sued as Bone & Joint, S.C.)*

Philadelphia, PA 19103-2921
(215) 963-5000
steven.reed@morganlewis.com
brendan.fee@morganlewis.com
zachary.johns@morganlewis.com
vincent.papa@morganlewis.com

Kenneth M. Kliebard (*pro hac vice forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606-1511
(312) 324-1000
kenneth.kliebard@morganlewis.com

*Attorneys for Defendants,*
*Aspirus, Inc. and Aspirus Network, Inc.*

*/s/ Kristy A. Christensen*
Kristy A. Christensen
MCCARTY LAW LLP
2401 East Enterprise Avenue
Appleton, Wisconsin 54913
(920) 882-4070
kchristensen@mccarty-law.com

*Attorneys for Defendants, ENT & Allergy Assoc., S.C. and Gastrointestinal Assoc., S.C.*